UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
03 JAN 17 PM 3: 16
U.S. DISTRICT COURT
N.D. OF ALABAMA

RIGHTWAY RESTAURANTS, INC., )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV-02-S-1331-NE
)
OLDFIELD EASTERN CORPORATION, )
and DONALD R. HARKLEROAD, )
)
    Defendants. )

ENTERED
JAN 1 7 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

    Plaintiff, Rightway Restaurants, Inc., brings claims based on defendant Oldfield Eastern Corporation's alleged default on a promissory note, and to enforce a personal guaranty executed by defendant Donald R. Harkleroad. The action is before the court on defendants' motion to dismiss or, alternatively, transfer venue to the Northern District of Georgia (doc. no. 12). Defendants contend that they are not subject to this court's jurisdiction, but, even if they are determined to be, venue should be transferred. For the reasons discussed herein, the court concludes that both aspects of defendants' motion are due to be denied.

## I. FACTUAL BACKGROUND

    Plaintiff is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business in Huntsville, Alabama.[1] Defendant Oldfield Eastern Corporation ("OEC") is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia.[2] Defendant Donald R. Harkleroad is a resident of

---

[1] Doc. no. 1 (Complaint) ¶ 1.
[2] *Id.* ¶ 2.



the State of Georgia,³ and was the president of OEC at the time the events complained of occurred.⁴

David Martin is the majority shareholder of Rightway Restaurants, Inc., which, in turn, was the majority shareholder of Steak-Out Franchising, Inc. ("Steak-Out").⁵ During late 1994, Martin traveled to Atlanta, Georgia, to meet with Harkleroad for the purpose of discussing a bill for legal services Harkleroad had performed for Steak-Out, and, Harkleroad's interest in purchasing that corporation.⁶ Following the meeting, Martin and Harkleroad negotiated, by means of telephone and facsimile transmission, the terms for sale of a controlling stock interest in Steak-Out to OEC.⁷

Harkleroad and Martin executed an agreement on January 11, 1995, whereby Martin agreed to sell to OEC nine hundred shares of Steak-Out for the sum of $900,000.⁸ The agreement was executed by means of facsimile transmission. The first payment in the amount of $350,000 was due on March 17, 1995, and the balance was due eighteen months thereafter.⁹ The sales agreement also contained the following provision:

> David Martin will act as a consultant to SOFI ["Steak-Out Franchising, Inc."] and own restaurants without franchise or royalty fees and provide training facilities and refrain from competing as previously agreed and shown in the prior offering book, as set forth in a separate agreement executed contemporaneously herewith that activates agreements previously executed.¹⁰

On March 16, 1995, Martin executed an "Agreement-Not-To-Compete," which Harkleroad also

---

³*Id.* ¶ 3.

⁴*See* doc. no. 23 (Submission of Evidence in Opposition to Defendants' Motion to Dismiss or Transfer), ex. C.

⁵Steak-Out also is an Alabama corporation, and it is "engaged in the business of licensing to selected persons the right to develop and operate restaurants under the name of Steak-Out, which sell a limited menu of charbroiled steaks, hamburgers and chicken, sandwiches, baked potatoes, salads, desserts and soft drinks featuring home delivery and take-out services." *Id.*, ex. B.

⁶Doc. no. 24 (Affidavit of David Gene Martin), at 1.

⁷*Id.* at 1-2.

⁸Doc. no. 23 (Submission of Evidence in Opposition to Defendants' Motion to Dismiss or Transfer), ex. A.

⁹*Id.*

¹⁰*Id.*

2

executed as Steak-Out's chief executive officer.[11] That agreement provided that it "would be governed by and construed in accordance with the laws of the State of Alabama."[12] On March 17, 1995, Harkleroad executed a promissory note on behalf of OEC in the principal amount of $550,000.[13] The promissory note also provided that it would be construed in accordance with Alabama law.[14] Additionally, Harkleroad executed a guaranty on March 17, 1995, pursuant to which he personally guaranteed and promised to pay, in the event of OEC's default, the first $250,000 due under the promissory note.[15] The promissory note and guaranty were executed by Harkleroad and Martin in Huntsville, Alabama.[16] On the same day, Harkleroad attended a meeting of Steak-Out franchisees at the Huntsville Hilton, and announced the sale.[17]

Plaintiff alleges that neither OEC nor Harkleroad paid the $550,000 balance due under the terms of the sales agreement. Plaintiff filed a civil action seeking payment and interest on May 30, 2002. OEC and Harkleroad contend that their contacts with Alabama are insufficient to subject them to this court's jurisdiction, and, even if so, venue should be transferred to the Northern District of Georgia.

## II. DISCUSSION

### A. Personal Jurisdiction

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and

---

[11] Doc. no. 23 ((Submission of Evidence in Opposition to Defendants' Motion to Dismiss or Transfer), ex. B.
[12] *Id.* at 9.
[13] *Id.*, ex. C.
[14] *Id.*
[15] *Id.*, ex. D.
[16] Doc. no. 24 (Affidavit of David Gene Martin), at 2.
[17] *Id.*

3

which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action. *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831, 119 S. Ct. 2295, 2307, 144 L. Ed. 2d 715 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)); *see also, e.g., Galindo-Del Valle v. Attorney General*, 213 F.3d 594, 598 n.2 (11th Cir. 2000) (observing that federal courts are "obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking."), *cert. denied*, 530 U.S. 941, 121 S. Ct. 2590, 150 L. Ed. 2d 749 (2001); *University of South Alabama*, 168 F.3d at 410 ("[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.").

When ruling upon a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction in the absence of an evidentiary hearing,

> the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted); *see also, e.g., Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

Plaintiff concedes that this court may not assert *general* personal jurisdiction over defendants. In other words, plaintiff concedes that defendants do not maintain "continuous and systematic

business contacts [with] the forum state." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000) (citing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1996). Accordingly, this court must determine whether it may assert *specific* personal jurisdiction over defendants — *i.e.*, that which arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint.

The determination of personal jurisdiction over a nonresident defendant is a two-step analytical process. First, a federal district court sitting in diversity must address the forum state's long-arm statute. Second,

> [i]f there is a basis for the assertion of personal jurisdiction under the state statute, [the district court must] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (citations omitted) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

"Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing Ala. R. Civ. P. 4.2(a)(2)(I)[18]); *see also Investors Guaranty Fund, Ltd. v. Compass Bank*, 779

---

[18] Rule 4.2(a)(2)(I) of Alabama Rules of Civil Procedure provides, in pertinent part:

(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:

. . .

(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to

So. 2d 185 (Ala. 2000); *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993); *Horn v. Effort Shipping Co., Ltd.*, 777 F. Supp. 927, 929 (S.D. Ala. 1991)). Alabama's long arm statute is "not limited to rigid transactional categories." *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983). The Alabama Supreme Court utilizes a two-part test to determine whether to exercise personal jurisdiction over a nonresident defendant: (1) "whether it is foreseeable to that nonresident defendant that he will be sued in this state"; and (2) "the degree of contact that the nonresident defendant has with this state." *Keelean v. Central Bank of the South*, 544 So. 2d 153, 156-57 (Ala. 1989), *overruled on other grounds by Professional Insurance Corp. v. Sutherland*, 700 So.2d 347 (Ala. 1997).

The determination of whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment also is a two-part inquiry. "First, we must decide whether each defendant has established 'minimum contacts' with [the forum state]. Second, we must determine whether the exercise of personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *Robinson*, 74 F.3d at 258 (citations and some quotation marks omitted). The Eleventh Circuit has described the two prongs of this inquiry in the following manner.

1. Minimum contacts

> Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. ... This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum ... and the litigation results from alleged injuries that "arise out of or relate to" those activities. ...
>
> Additionally, the defendant's conduct and connection with the forum must

---

satisfy the requirement of subdivisions (A)-(H) of this subsection (2), *so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.* [Emphasis supplied.]

be of a character that he should reasonably anticipate being haled into court there. . . . However,

> the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts . . . or because of the unilateral activity of a third person. . . . Jurisdiction is proper where the defendant's contact with the forum proximately result from actions by the defendant himself that create a "substantial connection" with the forum state. . . . Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of personal jurisdiction is not the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum. . . .

2.  Fair Play and Substantial Justice

Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate being haled into court there, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." . . . These other factors are the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies. . . . Minimum requirements of "fair play and substantial justice" may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities. . . . Conversely, these considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.

*Id.* at 258-59 (quoting *Madara*, 916 F.2d at 1516-17 (citations and footnoted omitted)).

In summary, when a nonresident person or entity purposefully avails himself (or itself) of the laws of the forum state, courts sitting within that state are entitled to assert specific jurisdiction over

7

that party. Thus, a forum state does not exceed its Constitutional reach when it asserts specific jurisdiction over interstate contractual obligations. "[P]arties who 'reach out beyond one state and create continuing relationships with citizens of another state' are subject to regulation and sanctions in that other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 2182, 85 L. Ed.2d 528 (1985). Moreover, these contacts need not be physical. "Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State." *Id.* at 476, 105 S. Ct. at 2184.

Harkleroad and OEC make much of the following facts: Martin traveled to Georgia to discuss with Harkleroad the possible sale of Steak-Out; negotiations occurred by telephone and by facsimile transmission; Harkleroad executed the sales agreement in Georgia; Harkleroad visited Alabama only one time; and, at some point, Steak-Out's executive offices were moved to Atlanta, Georgia. Defendants acknowledge that OEC's promissory note and Harkleroad's personal guaranty, the documents upon which plaintiff bases this action, were executed in Huntsville, Alabama, and both agreements provided that they "shall be construed in accordance with the laws of Alabama." Although defendants minimize the significance of those agreements, it is undisputed that defendants chose to do business with an Alabama resident and to purchase the controlling interest in an Alabama corporation. Moreover, they agreed, in arms-length negotiations, that Alabama law would govern the agreements that are at issue in this action. The court concludes that both OEC and Harkleroad purposefully availed themselves of the privilege of conducting activities within the State of Alabama, invoking the benefits and protections of its laws, such that they could reasonably anticipate being haled into court in this state.

Furthermore, the court concludes that subjecting defendants to this court's jurisdiction does

not offend traditional notions of fair play and substantial justice. Harkleroad resides in or near Atlanta, Georgia, which is located approximately 200 miles from Huntsville, Alabama, and there is regular flight service between Atlanta, Georgia, and Huntsville, Alabama. Consequently, the burden on defendants to defend the lawsuit in this forum is not substantial. Additionally, because this action involves an Alabama corporation, as well as contracts executed in Alabama and, by their very terms, governed by Alabama law, Alabama has a significant interest in adjudicating this dispute. Plaintiff also has a very significant interest in obtaining convenient and effective relief. Moreover, resolving this action in this forum furthers the judicial system's interest in efficient resolution of controversies. Accordingly, the court finds that exercise of jurisdiction over these defendants is appropriate.

**B.     Transfer**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court must first determine whether the action could have been brought in the proposed transferee forum. 28 U.S.C. § 1404(a); *see also Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503-04 (M.D. Ala. 1994). Under 28 U.S.C. § 1391(b)(2), venue would be proper in the Northern District of Georgia if it is where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Harkleroad resides within the Northern District of Georgia, and OEC is a Georgia corporation, with its principal place of business in Atlanta, Georgia — also within the Northern District of Georgia. At least some of the events which are relevant to this controversy occurred within that district. Accordingly, the court concludes that the action could have been brought in the Northern District of Georgia.

Generally, however, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Defendants contend that transfer is warranted because most of the witnesses and documents are located in the Northern District of Georgia, and that the cost to defendants of transporting evidence and witnesses to Alabama would be unduly burdensome. The court finds this contention unpersuasive, and that, even if credited, those considerations would not outweigh plaintiff's choice of forum.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or, alternatively, to transfer venue to the Northern District of Georgia, is due to be denied. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 17th day of January, 2003.

_____
United States District Judge